# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI

| | |
|---|---|
| UNITED STATES OF AMERICA | APPELLEE |
| V. | CAUSE NO. 1:15CR53 |
| JOHN E. LIGGINS | APPELLANT |

## ORDER

This cause comes before the court on John E. Liggins' appeal of the Magistrate Judge's denial of his motion to dismiss the misdemeanor charge against him and his subsequent conviction on that charge. The court finds the appeal to be well taken, and the Magistrate Judge's denial of the motion to dismiss will therefore be reversed.

The government charged Mr. Liggins with several violations in this case, including driving under the influence pursuant to 36 C.F.R. § 4.23(a)(1). Liggins subsequently moved the court to dismiss the charges against him based on lack of federal jurisdiction. Following a hearing on the matter, the Magistrate Judge denied Liggins' motion by way of a Memorandum Opinion filed on November 7, 2014. Liggins filed a motion for reconsideration on November 14, 2014, and this motion was also denied. On April 21, 2015, Liggins entered a plea of guilty to the driving under the influence charge, conditioned upon the retention of his right to appeal the Magistrate Judge's ruling on the motion to dismiss. Liggins was sentenced to six months' probation and ordered to pay $600 in fines and fees. As part of the plea agreement, the remaining charges were dismissed. The judgment was entered on April 21, 2015, and a notice of appeal was filed on April 27, 2015.

The facts of this case are largely undisputed. On December 1, 2013, while conducting a traffic stop on County Road 51 in Lee County, just off of the Natchez Trace Parkway, Ranger

1

Jonathan Williams observed a vehicle travelling in his direction and toward the Natchez Trace. Williams observed the driver of the vehicle, later identified as Liggins, throw a beer can from his vehicle. The government does not contest Liggins' contention that he was stopped by Williams just off the Natchez Trace, although it emphasizes that "Liggins was headed directly toward the Natchez Trace and would have driven onto the Parkway within seconds on his own accord if he had not been stopped a few feet shy of the boundary by Ranger Williams."

In his brief, Liggins describes what happened next as follows:

> After asking the driver, "How are you doing?" Ranger Williams began to question the driver, John Liggins, about the can allegedly thrown from the window of the vehicle. Within 30 seconds of the initial encounter, Ranger Williams instructed Mr. Liggins to put the car in park and produce his drivers license. After retrieving and taking custody of Mr. Liggins' drivers license, Ranger Williams instructed Mr. Liggins to drive his vehicle toward the intersection of the county road with the Natchez Trace Parkway, and to wait for him. Ranger Williams then turned his patrol car around, and parked behind Mr. Liggins' vehicle. He then proceeded to administer a field sobriety test to Mr. Liggins, who was ultimately placed under arrest and cited for driving under the influence, littering, and having an open container of an alcoholic beverage.

The government has not contested this description of events.

In considering these facts, the Magistrate Judge emphasized that Williams' initial traffic stop of Liggins on non-federal property did not constitute an arrest, and that "because Liggins was within the boundary of the Natchez Trace Parkway when the Ranger placed him under arrest, the court finds the defendant's motion to dismiss is not well taken, and it is hereby denied." In appealing this ruling, Liggins argued as follows in his brief:

> In denying Mr. Liggins' motion for dismiss, the Magistrate Judge based his ruling in significant part on the finding that Mr. Liggins "was not placed under arrest until he performed poorly on the field sobriety," which occurred within the boundary of the park. (Memorandum Opinion at 4, Doc. 7). There is certainly an argument to be made that his detention at the initial stop constituted an arrest, as, in no small part due to Ranger Williams' possession of the drivers license and the order to pull forward and park, Mr. Liggins did not feel that he was free to leave. However, these questions assume that

jurisdiction was proper in the first place. Because Ranger Williams did not have the jurisdictional authority to make a stop outside park boundaries for conduct that occurred outside park boundaries, these questions need not be reached.

[Appellant's brief at 5-6].

This court concluded that it would benefit from oral argument regarding these issues, and it accordingly set this appeal for a hearing, which took place on January 7, 2016. The appellate hearing proceeded in rather unexpected fashion, inasmuch as the government conceded at oral argument, for the first time, that Ranger Williams did not have the authority under federal law to stop Liggins for littering. [T. at 18]. The government raised an entirely new argument, however, that Williams had the right under Mississippi state law to make a citizens' arrest for littering. In support of that argument, the Government cited Fifth Circuit case law supporting this proposition, *see, e.g., U.S. v. Sealed Juvenile 1*, 255 F.3d 213 (2001) and, once again, this authority had not previously been cited in this case.

This court appreciates the government's candor in admitting that Williams lacked authority under federal law to make a traffic stop for the littering offense that allegedly took place on non-federal property. Indeed, the government's duty is not to prevail in this case at any costs, but rather to see to it that the law is followed and that justice is done. As it happens, the government would not have prevailed in this appeal regardless of whether it had conceded this issue, since this court had independently concluded that Williams lacked the authority under federal law to stop Liggins for littering on state property. In so concluding, the court notes that the government's authority supporting jurisdiction in this context involves the exact opposite scenario than is before this court, namely a federal officer stopping a suspect on non-federal property based on unlawful conduct which he observed take place on federal property. *See, e.g., United States v. Jones,* 428 F. Supp. 2d 497, 503 (W.D. Va. 2006).

3

A factual scenario such as that in *Jones* presents a much stronger argument for jurisdiction than the one here, since under 16 U.S.C. § 1a-6(b)(1), a National Park Service officer such as Williams may "make arrests…for any offense against the United States committed in his presence…provided such arrests occur within [the park] or the person to be arrested is fleeing [from the park] to avoid arrest." The government has cited no authority, either to the Magistrate Judge or to this court, supporting a conclusion that federal law authorizes federal officers to stop suspects on non-federal property for offenses which were likewise committed on non-federal property. Moreover, the above statutory language strongly suggests, even absent the government's concession, that Ranger Williams lacked the authority to do so.

This court expressed its skepticism regarding the government's "citizens' arrest" theory at the hearing, and it seems highly questionable to assert that Ranger Williams was purporting to make a citizens' arrest, rather than one based on his authority as a park ranger. At any rate, this court has now concluded that it should not even consider this argument. Not being an appellate court, this court was uncertain how it should deal with an argument raised for the first time on oral argument, but it has since conducted research which suggests that it should not even address it. Indeed, the Fifth Circuit has repeatedly held that "arguments presented for the first time at oral argument are waived" and should not be considered. *See, e.g. Comsat Corp. v. FCC*, 250 F.3d 931, 936 n. 5 (5th Cir. 2001); *Whitehead v. Food Max of Miss., Inc.,* 163 F.3d 265, 270 (5th Cir. 1998). This certainly strikes this court as being the correct approach, since it seems quite unfair to force Liggins' counsel to confront an entirely new theory of the case at oral argument, which he had no prior opportunity to research or even consider. Oral argument gives parties a chance to flesh out their existing theories of the case, but it does not properly serve as an opportunity for either party to present an entirely new theory of the case.

The court therefore declines to address the government's "citizen's arrest" theory, and it concludes that Ranger Williams lacked the jurisdiction to make the traffic stop in this case. While this court does not doubt Williams' good faith, the fact remains that he chose to stop Liggins based on conduct which he observed take place on state, not federal, property. While the government notes that the littering took place on a "scenic easement" which it possessed, it offers no authority suggesting that such is sufficient to render the littering an "offense against the United States" within the meaning of § 1a-6(b)(1).[1]

The court likewise finds unpersuasive the government's argument, based partly on policy grounds, that the inevitability that Liggins (a suspected drunk driver) would have soon crossed onto the Natchez Trace gave Ranger Williams the jurisdiction to make a stop in close proximity to the Trace. There is nothing in the language of § 1a-6(b)(1) which granted Williams the jurisdiction to make a pre-emptive stop on state property based on an offense against the United States which he believed to be imminent. Rather, the statute clearly seems to speak in terms of offenses against the United States which the federal officer has already observed take place. Even assuming for the sake of argument that a particular case might present a true emergency situation where a pre-emptive stop might be appropriate, the court does not regard this case as presenting such a scenario. Moreover, it strikes this court that the notion of "close proximity" is a slippery slope in the context of jurisdictional issues such as the one here. Indeed, if this court were to adopt a "close enough" exception to § 1a-6(b)(1) in this case, then it might reasonably be argued in another case that a stop which was made 1,000 yards, or 10,000 yards, from the Trace was "close enough." Where is the line to be drawn?

---

[1] Moreover, this court regards the government's concession that Williams lacked the authority under federal law to make the traffic stop implicitly puts to rest the "scenic easement" theory which it floated in its briefing.

Moreover, the notion that Liggins committed an "offense against the United States" by following a direct order from a federal officer to pull his vehicle forward has a manufactured quality to it which this court finds distasteful at best and constitutionally suspect at worst. True enough, Liggins no doubt planned to drive onto the Trace anyway, but this does not alter the fact that a stop was, in fact, made by a federal officer in a manner which exceeded his authority. That being the case, the officer's subsequent attempts to cure the jurisdictional defect by ordering the suspect to commit an act which later served as the basis for his prosecution does not strike this court as constituting the manner in which federal officers should be conducting their business.[2]

Indeed, it may even be a due process or other constitutional violation for the government to stop a suspect without jurisdiction to do so, essentially order him to "offend the United States" by moving his vehicle forward, and then prosecute on the basis of that offense. The government argues that, if Liggins had refused Williams' order to move his car forward, then he would have called county law enforcement officials to conduct a sobriety test. Under that scenario, however, the difference is that Liggins might be facing state, not federal, DUI charges. By following Williams' order, Liggins committed an act which led to his conviction for an entirely new criminal charge.

It appears to this court that Williams realized he had erred by stopping Liggins too soon and that the officer then sought to have the suspect pull his chestnuts out of the fire by exposing himself to additional criminal liability. In this regard, Williams' actions seem analogous to a prosecutor who realizes that he had a suspect arrested just prior to the completion of a criminal act and seeks to salvage the case by ordering the suspect to complete it. The fact that, in this

---

[2] In its briefing, the government appeared to characterize Liggins' decision to pull forward as a voluntary one. At oral argument, however, the government specifically agreed with counsel for Liggins' assertion that Liggins only crossed over the Park boundaries after Williams, having taken his license, instructed him to pull forward. [T at 4-5].

case, Liggins clearly intended to drive on the Natchez Trace perhaps reduces, but does not eliminate (at least in this court's mind) the troubling nature of this tactic. Procedures and due process matter, both as to the guilty and the innocent.

In the court's view, it makes far more sense to place the burden on Ranger Williams to understand the boundaries of his authority as a federal officer and to act accordingly. This does not strike this court as being a particularly onerous burden. Once again, the court does not doubt the good faith of this officer, but this does not alter the fact that he lacked authority under federal law to make the traffic stop in this case. The government has properly conceded as much at oral argument, and the court finds its new "citizen's arrest" theory to be both procedurally barred and likely without substantive merit. Moreover, the court finds, for the reasons previously stated, that Williams' efforts to cure the defects of the initial stop by essentially ordering Liggins to commit a new federal offense by driving onto federal property constitutes a highly suspect approach which should not be supported by the federal courts. The court therefore concludes that the Magistrate Judge's order refusing to dismiss this case was in error and is due to be reversed.

It is therefore ordered that the Magistrate Judge's order refusing to dismiss this case is reversed.

So ordered, this the 11th day of January, 2016.

                                    **/s/ MICHAEL P. MILLS**
                                    **UNITED STATES DISTRICT JUDGE**
                                    **NORTHERN DISTRICT OF MISSISSIPPI**